[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-15077

_____

KARASTAN L. EDWARDS,

                                                            Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A095-146-708

_____

Before JORDAN, NEWSOM, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Karastan Edwards petitions for review of the Board of Immigration Appeals' dismissal of his appeal from an immigration judge's removal order. That order was based on the IJ's determination that Edwards is removable, ineligible for cancellation of removal, and ineligible for asylum because he has been convicted of an "aggravated felony" as the Immigration and Naturalization Act defines the term. The IJ also determined that Edwards is ineligible for withholding of removal and Convention Against Torture relief. Edwards challenges all those determinations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case traveled a long and winding path before it ended up here. That path has included multiple appeals from the IJ to the BIA, multiple appeals from the BIA to this Court, multiple remands from this Court to the BIA, and multiple remands from the BIA back to the IJ. We will summarize that procedural history and some of the factual background.

### A. Initial Immigration Judge Removal Order

Edwards is a native and citizen of Jamaica who was admitted to the United States in 2002 and who became a lawful permanent resident in 2003. In February 2012 he pleaded guilty to and was convicted of the Georgia crime of family violence battery in violation of O.C.G.A. § 16-5-23.1. For that crime Edwards was

sentenced to 12 months confinement, but he was allowed to serve all of it on probation.

In March 2015 the Department of Homeland Security initiated removal proceedings against Edwards on the theory that his Georgia family violence battery conviction was an "aggravated felony" under the INA, making him removable. Edwards challenged that classification of his crime. He also filed applications for asylum, for withholding of removal, and for CAT relief. In those applications, he claimed membership in two social groups: "relatives of opponents of the pervasive gang and corrupt situation" in Jamaica, and "returning Jamaicans who have spent lengthy periods of time in industrialized developed affluent countries."

At a removal hearing, Edwards testified about those two asserted social groups. He testified that his mother, who lives in Jamaica, is part of a community organization that tries to positively influence children and that she was targeted and threatened by gangs because of it. Another reason she was targeted, according to Edwards, was because gang members believed that they could use her to get money from him. Edwards also testified that while visiting Jamaica in 2011 he had twice been robbed by gang members and was cut on the shoulder by a knife during one of those robberies. He claimed that he had reported that incident to the police and identified one of the perpetrators, but the police did nothing about it.

An immigration judge found that the Georgia family violence battery conviction for which Edwards had been convicted

was an aggravated felony under the INA, which made him removable and statutorily ineligible for both cancellation of removal and asylum.  The IJ also found that neither of the social groups Edwards claimed membership in made him eligible for withholding of removal.  The claimed social group of Jamaicans returning to Jamaica was not one "perceived by Jamaican society as sharing any common characteristics," and gangs targeted those people only because they might have money.  As for the social group of having family members who oppose gangs and corruption, the IJ found that Edwards had not shown that his family relationships would cause him any harm if he returned to Jamaica.

The IJ also determined that Edwards was ineligible for CAT relief because he had not shown that he more likely than not would be tortured in Jamaica.  In doing so, the IJ noted evidence of the Jamaican government's "efforts to combat corruption in the police and security forces as well as abuses that may rise to the level of torture," from which the IJ inferred that the government had not participated in or acquiesced to any torture.

B.  <u>First Appeal to the BIA, First State Court Sentence Modification Order, and First Remand to the Immigration Judge</u>

After Edwards appealed the IJ's order to the BIA, and while that appeal was still pending, he filed a motion to remand the case to the IJ.  He asked for a remand because after filing the appeal he had gotten a Georgia state court judge to issue an order "modifying" his sentence for the Georgia family violence battery conviction.

Edwards' motion to the state court requesting a sentence modification had focused exclusively on the immigration consequences of his 12-month sentence. The motion informed the court that Edwards' "misdemeanor crime in Georgia has significant collateral effects on his status as a legal permanent resident of the United States" and that "due to the 12 month sentence, his misdemeanor offense is viewed as an aggravated felony by the immigration courts." That 12-month sentence, the motion told the state court, "will result in his removal from the United States and will leave his U.S. Citizen spouse and son without their primary financial and emotional support." It continued: "Further, [Edwards] shows this is harsh and would not be in the best interest of himself or society and that same would be detrimental to all." In his motion, Edwards acknowledged that he had already "completed his sentence as required by the court," but he still requested that sentence be modified "from 12 months probation to 11 months probation, a more reasonable judgment in order that [Edwards] may continue his contribution to society and his family."

The district attorney's office for the county where Edwards had been convicted consented to Edwards' motion, and the state court granted it. The order did not give a reason for granting the motion other than stating that the "motion ha[d] been read and considered by the Court, and the State ha[d] an opportunity to be heard on the matter and ha[d] no objection to" it. The court ordered Edwards' already-served sentence to "be modified from 12 months probation to 11 months and 27 days probation." And the

order stated that: "All other terms and conditions of the sentence shall remain in full force and effect as originally imposed." The state court issued that order in August 2015, about two-and-a-half years after Edwards had finished serving the 12-month sentence that had been imposed on him in February 2012.

In light of the state court's sentence modification order, the BIA granted Edwards' motion to remand to the IJ. After considering the state court order, the IJ again ordered Edwards removed. It determined that both the modification order and the original sentence were entitled to full faith and credit, but it interpreted the modification order as changing only Edwards' sentence of probation, not his sentence of confinement. Under the IJ's interpretation, Edwards' modified sentence was "12 months or one year of confinement with 11 months and 27 days of such sentence suspended in favor of probation." Based on that interpretation of the modification order, the IJ determined that Edwards' sentence, even as revised, still amounted to a term of imprisonment of at least one year, which meant he had been convicted of an aggravated felony. That made Edwards removable, ineligible for cancellation of removal, and ineligible for asylum. The IJ also incorporated in the order the earlier decisions about Edwards being ineligible for withholding of removal and CAT relief.

C.  <u>Second Appeal to the BIA, First Appeal to this Court, Second</u>
<u>State Court Sentence Modification Order, and Second Remand to</u>
<u>the Immigration Judge</u>

Edwards appealed the IJ's second order to the BIA, which affirmed it in all respects and dismissed the appeal.  In doing so, the BIA found no clear error in the IJ's interpretation of the state court sentence modification order or in the determination that Edwards had been convicted of an aggravated felony despite that state court order.  The BIA also affirmed the IJ's determination that Edwards was ineligible for withholding of removal.  It "discern[ed] no clear error in the finding that the record does not reflect adequate evidence that the respondent would be targeted *because* he is a returnee from the United States or due to his family ties."  It also noted record evidence that "the criminal gangs that the respondent fears in Jamaica target victims because they seek money, and not due to the fact they come from the United States or otherwise."  Finally, the BIA "affirm[ed] as lacking clear error the [IJ's] finding that [Edwards] has not established that it is more likely than not that he would be tortured in Jamaica or that he could not relocate within Jamaica and avoid the likelihood of such harm."

Edwards petitioned this Court for review of the BIA order.  But while that petition was pending, in February 2017 he obtained another state court sentence modification order.  It resulted from his second motion requesting a modification, which was similar to his first motion, borrowing much of its language.  Like the first modification motion, the second one focused exclusively on the

immigration consequences that Edwards was facing. It also alluded to the IJ's interpretation of the first modification order and asked the state court to "clarify that the original sentence has in fact been *modified from 12 months confinement allowed to be served on probation to 11 month[s] and 27 days confinement allowed to be served on probation.*" Edwards asked for this second modification, as he had the first one, "in order that he may continue his contribution to society and his family." In other words, so that he would not be removed from this country.

The district attorney's office, as it had with Edward's first sentence modification motion, consented to his second one, and only two days after Edwards had filed that second motion the state court granted it. As with the first modification order, the state court gave no reason for this second one other than noting that Edwards "has filed a new motion to modify and clarify; and said motion having been considered by the Court and the State having no objection, the Court grants the motion." This time the state court modified Edwards' already-served sentence "to 11 months and 27 days confinement allowed to be served on probation." Exactly what Edwards had requested. The state court issued the second modification order in February 2017, about four years after Edwards had finished serving the 12-month sentence that had been imposed on him in February 2012.

On the same day the state court issued the second modification order, Edwards filed with the BIA a motion to reopen, and in May 2017 the BIA granted it. We dismissed the petition that had

been pending with us. The BIA remanded the case to the IJ, who again — for the third time — ordered Edwards removed. The IJ determined that the second state court sentence modification order did not change Edwards' conviction from being for an aggravated felony under federal immigration law. Summarizing BIA precedent, the IJ concluded that the original sentence imposed on Edwards controlled because the new modification order did not void it. Once again, the IJ incorporated by reference his earlier decisions that Edwards is ineligible for withholding of removal and CAT relief, finding that no new evidence had changed those decisions.

D. Third Appeal to the BIA and Second Appeal to this Court

Edwards again appealed to the BIA, which affirmed the IJ in all respects and dismissed the appeal. In doing so, the BIA treated the second state court modification order as an order clarifying Edwards' sentence and found that under this Court's precedent the "clarification" had no legal effect for immigration purposes. That meant Edwards had still been convicted of an aggravated felony, and as a result he was still ineligible for cancellation of removal or asylum. As for withholding of removal and CAT relief, the BIA reiterated the same reasons it had previously given for affirming the IJ's determination that Edwards was ineligible for both.

Edwards petitioned this Court for review. But while that petition was pending the government filed an unopposed motion to remand to the BIA for it to reconsider the state court's second modification order. The reason the government gave for the request was that the BIA may have treated the "modification" order

as a "clarification" order, which might have been contrary to BIA precedent as it stood at the time.  We granted the motion.

### E.  Intervening Agency Authority:  *Matter of Thomas and Thompson*

Before the BIA decided Edwards' case on remand, the Attorney General issued a controlling decision, *Matter of Thomas*, 27 I. & N. Dec. 674 (A.G. 2019).  Up until then, to determine the immigration effect of state court orders the BIA applied different tests depending on the type of order at issue.  If the order "vacated" a conviction based on a defect in the proceedings, the BIA treated that action as having legal effect for immigration purposes.  *Id.* at 675.  If the order "modified" a sentence, it was given full faith and credit regardless of the reason for the modification, meaning the sentence had legal effect for immigration purposes.  *Id.*  And if the order "clarified" the sentence, the BIA used a multi-factor test to determine if it had any immigration effect.  *Id.*  The different treatment given to "clarification" and "modification" orders had led in two BIA cases to the two petitioners, whose situations were materially identical, getting opposite outcomes based on nothing more than the labels that the state courts had given the order altering each petitioner's sentence.  *See id.* at 679.

The Attorney General certified to himself those two BIA decisions "to address these inconsistencies and to clarify the appropriate treatment under the INA."  *Id.*  The "appropriate treatment under the INA," according to the Attorney General, was that the BIA precedent about the distinction between "clarification" and

"modification" orders needed to be overruled.  *See id.* at 674–75, 690.  The Attorney General interpreted the relevant statutory text as meaning that Congress' intent was that all:

> state-court orders that modify, clarify, or otherwise alter a criminal alien's sentence . . . will be given effect for immigration purposes only if based on a procedural or substantive defect in the underlying criminal proceeding; these orders will have no effect for immigration purposes if based on reasons unrelated to the merits of the underlying criminal proceeding, such as rehabilitation or the avoidance of immigration consequences.

*Id.* at 674, 690.  So the labels a court put on the order describing the action the court was taking would no longer determine the immigration effect of the order.   All that would matter is whether the order was issued based on a procedural or substantive defect in the underlying criminal proceeding.

### F.  Final BIA Decision

After *Matter of Thomas* overruled the "clarification" and "modification" regime, the BIA was left with the task of applying to this case the new regime focused on procedural or substantive defects.  Doing that, the BIA noted that Edwards "has pointed to no evidence in the record to reflect that his criminal proceedings were marred by procedural or substantive defect."  As a result, under *Matter of Thomas* the modification order had no effect for

immigration purposes; it did not change the fact that Edwards had been convicted of an aggravated felony under the INA.

The BIA also adopted, yet again, its past reasoning that Edwards was ineligible for withholding of removal and CAT relief. It reiterated, among other things, that Edwards had not proved that he would be harmed because of membership in his claimed social groups and that the IJ "did not clearly err in finding inadequate evidence to support a finding that it was more likely than not that [Edwards] would be tortured in Jamaica." The BIA dismissed Edwards' appeal.

In his petition to us, Edwards challenges the BIA's determination that he was convicted of an aggravated felony. His challenge attacks the validity of the Attorney General's *Matter of Thomas* decision, including the reasonableness of its statutory interpretation. Edwards also contends that the BIA erred in finding him ineligible for withholding of removal and CAT relief.[1]

---

[1] In addition, Edwards contends that the IJ should have recused himself and that the BIA erred in determining that the IJ did not need to recuse. We have reviewed this contention and determined that it is entirely without merit and warrants no further discussion. *Cf., e.g., United States v. Iriele*, 977 F.3d 1155, 1165 n.6 (11th Cir. 2020) ("We will not discuss why those scattershot contentions lack merit."); *Tompkins v. Moore*, 193 F.3d 1327, 1331 n.1 (11th Cir. 1999) ("The issues we do not write more about merit no further discussion here beyond the statement that we agree with the district court . . . ."); *Dominguez v. Tom James Co.*, 113 F.3d 1188, 1190 (11th Cir. 1997) ("None of the Company's other issues that we have listed above merit any further discussion.").

## II. STANDARDS OF REVIEW

"When the BIA issues its own opinion, we review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230–31 (11th Cir. 2007) (quotation marks and ellipsis omitted). "We review questions of law *de novo,* including whether a conviction qualifies as an aggravated felony under the Immigration and Nationality Act." *Talamantes-Enriquez v. U.S. Att'y Gen.*, 12 F.4th 1340, 1347 (11th Cir. 2021) (quotation marks omitted). We also review *de novo* questions of statutory interpretation, but we do so through the lens of *Chevron*, which dictates that the Attorney General and the BIA are "entitled to deference in interpreting ambiguous provisions of the INA." *Negusie v. Holder*, 555 U.S. 511, 516 (2009) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984)); *see also I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (recognizing that "judicial deference to the Executive Branch is especially appropriate in the immigration context"); *Herrera v. U.S. Att'y Gen.*, 811 F.3d 1298, 1300 (11th Cir. 2016). "Congress has charged the Attorney General with administering the INA, and a 'ruling by the Attorney General with respect to all questions of law shall be controlling.'" *Negusie*, 555 U.S. at 516–17 (quoting 8 U.S.C. § 1103(a)(1)). In light of that and other considerations, the Supreme Court has held not only that *Chevron* deference applies, but also that "[j]udicial deference in the immigration context is of special importance." *Id.*

Under *Chevron*, if the statutory text is unambiguous and answers the question presented, we apply the text according to its terms with no need for deference. *See Hincapie-Zapata v. U.S. Att'y Gen.*, 977 F.3d 1197, 1200 (11th Cir. 2020); *Arevalo v. U.S. Att'y Gen.*, 872 F.3d 1184, 1188 (11th Cir. 2017). But "if the statute is silent or ambiguous with respect to the specific issue presented, we must then determine whether the agency's interpretation is reasonable or based on a permissible construction of the statute." *Arevalo*, 872 F.3d at 1188 (citing *Chevron*, 467 U.S. at 843); *see also Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1341 (11th Cir. 2019).

We review the BIA's factual findings under the "highly deferential" substantial evidence standard, under which we may reverse only if the "record not only supports reversal, but compels it." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009) (quotation marks omitted).

## III.  AGGRAVATED FELONY ISSUE

Edwards challenges the BIA's determination that he was convicted of an aggravated felony. If he was, he is statutorily ineligible for cancellation of removal and asylum. *See* 8 U.S.C. § 1158(b)(2)(B)(i); *Talamantes-Enriquez*, 12 F.4th at 1347. An "aggravated felony" is a "crime of violence . . . for which the term of imprisonment [was] at least one year." 8 U.S.C. § 1101(a)(43)(F). The meaning of "term of imprisonment" and the other definitional components of an "aggravated felony" are matters of federal law. *See Talamantes-Enriquez*, 12 F.4th at 1354 ("[W]e are not bound

by a state judge's interpretation of a state court sentence order be-
cause we are dealing with federal law and federal statutes, not state
law and state statutes."); *Herrera*, 811 F.3d at 1301 ("Because words
in federal statutes reflect federal understandings, the statement of
the Georgia court in its order of clarification that [the petitioner]
was not sentenced to any confinement was due no weight in his
immigration proceeding.") (quotation marks and citation omitted;
alteration adopted); *United States v. Ayala-Gomez*, 255 F.3d 1314,
1319 (11th Cir. 2001) ("Words in federal statutes reflect federal un-
derstandings, absent an explicit statement to the contrary, even if a
state uses the word differently.").

Edwards does not dispute that his Georgia family violence
battery conviction was for a crime of violence; what he challenges
is the BIA's determination that his term of imprisonment was for
at least one year. *Cf. United States v. Garza-Mendez*, 735 F.3d 1284,
1287 (11th Cir. 2013) ("On appeal, [the defendant] does not contend
that his state conviction [of Georgia family violence battery] is not
a crime of violence under 18 U.S.C. § 16; instead he argues that he
was not sentenced to an imprisonment term of at least one year.")
(quotation marks omitted; alteration adopted). Edwards makes
that challenge despite the fact that under our precedent his original
sentence of 12 months confinement allowed to be served on pro-
bation is undoubtedly a term of imprisonment of at least one year.
*See Talamantes-Enriquez*, 12 F.4th at 1353 ("Our precedent estab-
lishes that [the petitioner] was sentenced to a term of imprison-
ment for at least one year for purposes of § 1101(a)(43)(F), even if

he was permitted to serve part or all of that sentence on proba-
tion.").

Edwards' position is that what counts for immigration pur-
poses is not his original sentence of 12 months but the modified
sentence of 11 months and 27 days that resulted from the last state
court order.  Because that contention is directly foreclosed by the
Attorney General's *Matter of Thomas* decision, Edwards attacks
that decision's legality.  He makes two broad contentions about it:
that the Attorney General lacked the authority to issue *Matter of
Thomas* at all; and that even if he had the authority, *Matter of
Thomas* is an unreasonable interpretation of the INA.

A.  The Attorney General's Authority

Congress has provided that on matters of immigration law
"determination and ruling by the Attorney General with respect to
all questions of law shall be controlling."  8 U.S.C. § 1103(a)(1).  As
we have recognized: "Congress has vested in the Attorney General
the authority to decide legal questions arising under the immigra-
tion laws." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1323 n.7
(11th Cir. 2001).  "The Attorney General has delegated this func-
tion to the Board," but he still "retains the authority to review final
decisions of the BIA" and overrule them, as he did here.  *Id.*; *see
also* 8 C.F.R. § 1003.1(h); *Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1333
(11th Cir. 2009) ("The fact that the BIA had previously construed
the statute differently . . . did not prohibit the Attorney General
from holding otherwise.").  Not only that, but the Attorney Gen-
eral can review and overrule BIA decisions upon his own initiative,

*see Farquharson*, 246 F.3d at 1323 n.7; 8 C.F.R. § 1003.1(h)(1)(i), as he did here.

Edwards takes issue with the Attorney General's decision to use adjudication instead of rulemaking in this instance. But it "is well established . . . that agencies have discretion to choose whether to proceed by rulemaking or adjudication." *RTC Transp., Inc. v. I.C.C.*, 731 F.2d 1502, 1505 (11th Cir. 1984). That "is true even when adjudication is used to announce new policy after years of contrary precedent." *Id.* The Attorney General's choice to over-rule BIA precedent through the decision in *Matter of Thomas* instead of through rulemaking was well within his statutory authority.

Edwards alternatively argues that the *Matter of Thomas* decision cannot be applied retroactively to him. But we have already rejected this kind of retroactivity argument. We addressed it in a case where the BIA had dismissed a petitioner's appeal based on "the Attorney General's intervening precedential decision" that had overruled BIA precedent. *Yu*, 568 F.3d at 1330. We held that the "BIA did not retroactively apply a new law but instead applied the Attorney General's determination of what the law had *always* meant." *Id.* at 1333 (quotation marks omitted).

The same is true here. The *Matter of Thomas* decision is based on interpreting the statutory text to enforce its original meaning and to effectuate Congress' intent. The BIA's prior mis-interpretation of the statute does not mean *Matter of Thomas* an-nounced new law. It just correctly stated what the old law is. *See*

*Yu*, 568 F.3d at 1330 (summarizing a Supreme Court decision as holding that "the Supreme Court's judicial construction of a statute did not change the prevailing law but merely decided the statute's original meaning and explained why the Courts of Appeals had misinterpreted Congressional intent").  There is no retroactivity problem.

## B.  Statutory Interpretation

As we have mentioned, we review *de novo* questions of statutory interpretation, subject to the principles of *Chevron* deference that are "of special importance" in the immigration context.  *Negusie*, 555 U.S. at 517; *see also Arevalo*, 872 F.3d at 1187; *Amezcua-Preciado*, 943 F.3d at 1341; *Yu*, 568 F.3d at 1331.  The *Chevron* step one question "is whether the usual rules of statutory interpretation provide a clear answer" to the specific issue presented.  *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1298 (11th Cir. 2018).  If the statutory text is unambiguous and "answers the question presented . . . we apply the statute and determine whether the [BIA's] decision complies with the statutory text."  *Hincapie-Zapata v. U.S. Att'y Gen.*, 977 F.3d 1197, 1200 (11th Cir. 2020).  If the INA "is silent or ambiguous, we proceed to the second step [of *Chevron*], which requires us to determine whether the agency's interpretation is a "permissible construction of the statute.'"  *Yu*, 568 F.3d at 1331.  "So long as an agency's interpretation is reasonable, it is controlling," and it is reasonable if it is "not arbitrary, capricious, or manifestly contrary to the statute."  *Id.* at 1332 (quotation marks omitted).

Before turning to the statutory text here, we define the specific and precise issue before us, as step one of *Chevron* requires. *See, e.g.*, *Chevron*, 467 U.S. at 843 (asking whether the statute is ambiguous "with respect to the *specific* issue") (emphasis added); *id.* at 862 (concluding "that the legislative history as a whole is silent on the *precise issue before us*") (emphasis added); *In re Gateway*, 983 F.3d at 1256 (noting that at step one of *Chevron* "[w]e must ascertain whether Congress had a specific intent on the *precise question before us*") (emphasis added; quotation marks omitted); *Hincapie-Zapata*, 977 F.3d at 1200 (stating that deference may be due if "the statute is silent or ambiguous with respect to the *specific issue*") (emphasis added; quotation marks omitted); *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1273 (11th Cir. 2009) ("The first question is whether Congress has directly spoken to *the precise question at issue.*") (emphasis added; quotation marks omitted).

In this case, the facts of the state court sentence modification order define the precise issue presented and the outer reaches of our holding. *Cf. Alim v. Gonzales*, 446 F.3d 1239, 1248 (11th Cir. 2006) (holding that a prior decision that had addressed a conviction vacated for a "rehabilitative" reason was not binding in a factual scenario where a conviction had been vacated because of a defect such as a violation of a constitutional right).

The key facts are clear: Edwards' state court sentence was modified so that he could avoid the immigration consequences of being an aggravated felon under federal law, and in that way avoid

removal. We know that's why his sentence was modified because the state court gave no reasons for modifying Edwards' sentence other than stating that it had considered his motion. Edwards' motion, in turn, was entirely about his immigration situation and the harsh effect that removal would have on him and his family. *See* supra at 5, 8. Neither of his two motions to modify mentioned any other reason for modifying his sentence.

In the closely analogous immigration context of state court orders that vacate a conviction (instead of revising a sentence), we have held that we can look to a petitioner's state court filing to determine "the reason underlying the state court's decision to vacate [his] plea." *Alim*, 446 F.3d at 1251. We concluded in *Alim* that "we have no reason to doubt that [the] plea was vacated for the reason provided in" the petitioner's request for relief, and that was "particularly so because the state did not challenge or contest [the petitioner's] factual allegations." *Id.* The same is true here. The state court granted Edwards' unopposed motion for a sentence modification solely for the reason stated in that motion. One reason and one reason alone: to enable Edwards to avoid removal under federal immigration law. The question is whether the INA prohibits giving legal effect for immigration purposes to this kind of state court sentence modification order.

We begin our analysis of the meaning of the statute, as we always should, with the text of it. The relevant text comes from 8 U.S.C. § 1101(a)(48), which is located in the definitions section of the statute. It states in full:

(A) The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

(B) Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law *regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.*

8 U.S.C. § 1101(a)(48) (emphasis added).

Our primary focus is on the meaning of a "term of imprisonment or a sentence." *Id.* § 1101(a)(48)(B). The statute partially defines a "term of imprisonment or a sentence" by specifying one thing it is "deemed to include," which is: "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." *Id.* We have held that "suspension"

takes its federal meaning, which is "a procedural act that precedes a court's authorization for a defendant to spend part or all of the imposed prison sentence outside of prison." *Ayala-Gomez*, 255 F.3d at 1319. Based on that definition of "suspension," we have interpreted a "term of imprisonment" to "include all parts of a sentence of imprisonment from which the sentencing court excuses the defendant, even if the court itself follows state-law usage and describes the excuse with a word other than 'suspend.'" *Id.*

The partial statutory definition of a "term of imprisonment" and our interpretation of it in *Ayala-Gomez* do not entirely resolve the precise issue before us. Because we have held that a "suspension" is "a procedural act that *precedes*" a court allowing a defendant to avoid spending time in prison, *id.* (emphasis added), that part of the partial statutory definition does not tell us about post-sentencing modifications to an already served sentence.

And though the statute refers plainly to "the period of incarceration or confinement ordered by a court of law," that does not tell us much about the precise issue before us either. 8 U.S.C. § 1101(48)(B). It doesn't because both the original sentence and the modified sentence include a "period of incarceration or confinement ordered by a court of law." *Id.* The question is which period of confinement counts for purposes of immigration law, the original one or the modified one.

The statute does not unambiguously answer that question. But the Attorney General has. *See* 8 U.S.C. § 1103(a)(1); *see also Yu*, 568 F.3d at 1333. And his interpretation on the precise question

of law at issue here is "reasonable and entitled to deference." *Yu*, 568 F.3d at 1333; *see also Bastias v. U.S. Att'y Gen.*, 42 F.4th 1266, 1274 (11th Cir. 2022) (explaining that at *Chevron* step two the agency has a "range of discretion" to interpret the INA and is free to make a policy-based decision from a variety of possible interpretations).

As we have discussed, *see supra* at 10–11, in *Matter of Thomas* the Attorney General determined that a state court sentence modification order issued for "avoidance of immigration consequences" has no legal effect for immigration purposes. 27 I. & N. Dec. at 674. That determination with respect to this question of law is controlling. *See* 8 U.S.C. § 1103(a)(1); *Yu*, 568 F.3d at 1333. Edwards' sentence modification order was issued *after* he completed his sentence and *after* his removal proceedings began and *only* for the purpose of preventing removal. Because Edwards' modification order did not change his "term of imprisonment" for purposes of federal immigration law, the BIA correctly determined that he is an aggravated felon, and thus removable, and ineligible for cancellation of removal, and ineligible for asylum.

## IV. DENIAL OF WITHHOLDING OF REMOVAL ISSUE

To qualify for withholding of removal, Edwards must show that if he returned to Jamaica his life or freedom would be threatened on account of his membership in a particular social group. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1331 (11th Cir. 2011). He bears the burden of showing that he more likely than not would be persecuted because of his membership in that social group. *Id.* The

BIA determined Edwards had failed to carry his burden of showing that likelihood. That determination was a factual one. *See Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290–91 (11th Cir. 2014) (explaining that the BIA made a finding "as a matter of fact" that the petitioner failed to prove that she more likely than not would be persecuted in the future on account of her membership in a particular social group). Edwards' challenge to the factual determination that he failed to prove the likelihood of future persecution is his only basis for challenging the BIA's determination that he is ineligible for withholding of removal.

The front gate problem with Edwards' factual challenge to the order denying him withholding of removal is that we do not have jurisdiction to review it. *See id.* at 1289 (explaining that "[w]e lack jurisdiction . . . to review factual findings that an alien is unlikely to endure persecution" and "to reweigh the evidence that the agency considered"). We have held that 8 U.S.C. § 1252(a)(2)(C) means that the "only relief available to [the petitioner], a criminal alien, is relief predicated on errors of law, not errors of fact." *Malu*, 764 F.3d at 1290; *accord Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067, 1073 (2020) (holding that under 8 U.S.C. § 1252(a)(2)(D), jurisdiction exists to review "the application of a legal standard to undisputed or established facts," but that provision "will still forbid appeals of factual determinations—an important category in the removal context"). We also held in *Malu* that based on the jurisdictional bar in § 1252(a)(2)(C), we "lack jurisdiction to review the Board's factual finding" that a criminal alien has "failed to prove

that she more likely than not would be persecuted in the future on account of her membership in" a particular social group.  *Malu*, 764 F.3d at 1291.  That holding, backed up by what the Supreme Court stated in *Guerrero-Lasprilla*, bars our review of Edwards' factual challenges to the BIA's finding that he failed to prove he would be harmed in Jamaica because of his membership in a particular social group.  Because Edwards asserts no challenges "predicated on errors of law," *id.* at 1290, we have no jurisdiction to review that part of the BIA's decision denying withholding of removal.

The Supreme Court's decision in *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), does not change our view about our lack of jurisdiction.  *Nasrallah* held that appellate courts do have jurisdiction to review under the substantial evidence standard the BIA's factual determinations leading to an order denying CAT relief.  *Id.* at 1690.  The Court acknowledged the government's argument that its decision "might lead to judicial review of factual challenges to statutory withholding orders," but it emphasized that the "question is not presented in this case, and we therefore leave its resolution for another day." *Id.* at 1694.

At least until that "another day," we are bound by our prior panel precedent to hold that we lack jurisdiction over factual challenges to orders denying withholding; the *Nasrallah* decision has not overruled or undermined that precedent to the point of abrogation.  *See United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc).  For a Supreme Court decision to undermine

panel precedent to the point of abrogation, the "decision must be clearly on point" and "*clearly contrary*" to the panel precedent. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (quotation marks omitted). "In addition to being *squarely on point*, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case *actually abrogate or directly conflict with, as opposed to merely weaken, the holding* of the prior panel." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (emphasis added).

The *Nasrallah* decision about CAT relief orders leaves in force our prior panel precedent about withholding of removal orders. *See Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007) ("Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing."). The *Nasrallah* decision was based on statutory interpretation, and the statutory provisions interpreted in that decision and this one are different. *See* 8 U.S.C. § 1231(b)(3); The Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105-277, § 1242, 112 Stat. 2681-822 (1998); Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-627 (1996). Which probably is why the Supreme Court was moved to point out in *Nasrallah* that it was not reaching any holding about orders denying withholding of removal.

Not only that but our post-*Nasrallah* precedent also indicates that our prior panel precedent about withholding orders continues to bind us. *See Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1327 (11th Cir. 2021) (reciting in the same paragraph the rule from *Nasrallah* about CAT relief orders and the rule from our prior panel precedent about withholding orders); *Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958, 967 (11th Cir. 2021) (holding that an "order granting a noncitizen withholding of removal is a final order of removal").

## V. CAT RELIEF ISSUE

The BIA determined that the IJ "did not clearly err in finding inadequate evidence to support a finding that it was more likely than not that [Edwards] would be tortured in Jamaica." As we've already mentioned, we do have jurisdiction to review under the substantial evidence standard the BIA's factual determinations about the denial of CAT relief. *See Nasrallah*, 140 S. Ct. at 1691. Under that standard we can reverse the BIA only if the record compels it. The record does not.

The definition of "torture" for CAT purposes requires severe pain or suffering that was, among other things, "inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1); *see also Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010) ("[F]or CAT relief, an applicant must show that it is more likely than not that he will be tortured by, or with the acquiescence of, government

officials if returned to the designated country of removal."); *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1323 (11th Cir. 2007).

Edwards failed to show the likelihood of government involvement or acquiescence in any torture by the Jamaican government. As the IJ found, the Jamaican government had made "efforts to combat corruption in the police and security forces as well as abuses that may rise to the level of torture." The police also took Edwards' statement after he was robbed by gang members. Even if they failed to arrest the perpetrators, we have held that "CAT does not extend so far" as to allow "a person [to] obtain CAT relief merely because he was attacked by a gang of neighborhood thugs whom the police were unable to apprehend." *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004). The record does not compel the conclusion that Edwards has established entitlement to CAT relief.

## VI. CONCLUSION

For all of those reasons, Edwards' petition is **DISMISSED in part DENIED in part**.